UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00647-FDW
(3:15-cr-00226-FDW-DSC-3)

| | |
|---|---|
| CLAUDE BERNARD McRAE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 1][1] and Petitioner's "Motion for Status" [Doc. 6].

## I.  BACKGROUND

Petitioner Claude Bernard McRae ("Petitioner") was involved in a scheme designed to defraud Medicaid of millions of dollars through the submission of fake claims. Beginning in 2011, Cynthia Harlan, Tyree Jones, Petitioner, and others perpetrated a scheme to defraud Medicaid through the submission of fabricated claims for mental and behavioral health services that were never provided. [See CR Doc. 111 at ¶¶ 12-31: Presentence Investigation Report (PSR)]. Harlan held herself out as a consultant specializing in the operation of mental health companies and Medicaid reimbursement. [Id. at ¶ 6]. Harlan claimed to assist companies with obtaining Medicaid credentials, increasing their client base, billing Medicaid, and passing any audits. [CR Doc. 165

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:18-cv-00647-FDW, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:15-cr-00226-FDW-DSC-3.

at 106-07, 145-46, 155; CR Doc. 166 at 274-75; CR Doc. 167 at 104]. Harlan and her partner companies used Vincent Bey as a recruiter to gather names, Medicaid identification numbers, and other information for use in the scheme. [CR Doc. 111 at ¶ 15]. Bey lied to Medicaid recipients to obtain their information, including promises of transportation and assistance with paying bills. [Id.].

Once Harlan had "client" information, she determined which of her company clients would bill Medicaid. [CR Doc. 165 at 108, 150, 152, 264-65; CR Doc. 166 at 201-2; CR Doc. 167 at 23-24; see id. at 127-28]. Harlan then sent the client information and fabricated dates and type of service supposedly received to Townhall Enterprise, a billing company she required her corporate clients to use. [CR Doc. 165 at 111, 120, 147, 150; CR Doc. 166 at 229; CR Doc. 167 at 61]. Harlan also hired individuals to fabricate intake records, needs assessments, and progress notes that service providers must maintain in order to bill Medicaid. [CR Doc. 165 at 111-13, 120, 238-42, 267; CR Doc. 166 at 201-4]. Harlan and the corporate clients paid these individuals. [CR Doc. 165 at 112-115, 120, 248-49, 263; CR Doc. 166 at 79-86; CR Doc. 167 at 28, 30].

Petitioner and Jones owned and operated Carolina Care One ("CC1") and Esteem Family Life Services ("Esteem"), two companies enrolled with Medicaid. [CR Doc. 166 at 8, 18, 26; CR Doc. 111 at ¶ 10]. During the spring of 2012, Jones and Petitioner transitioned their business from Esteem to CC1. [CR Doc. 111 at ¶ 10]. Petitioner and Jones jointly owned CC1, but Petitioner falsely represented to Medicaid and other oversight authorities that he solely owned CC1 to conceal the fact that Jones was a convicted felon. [Id.]; United States v. Harlan, 714 Fed. App'x 220, 224 (4th Cir. 2017). CC1 "worked in conjunction with Harlan and her billing associates to submit millions of dollars[-]worth of fraudulent claims to Medicaid." Id. "During the conspiracy, Harlan provided [Petitioner] spreadsheets detailing the amount owed to each person who assisted

2

in the scheme and the coconspirators' activities that were indicative of fraud." Id. "[Petitioner] knew about the substantial profit that CC1 was making, despite CC1's limited number of actual clients, and he spent a significant amount of the fraudulent proceeds." Id.

A grand jury indicted Petitioner, Harlan, and Jones on September 17, 2015. Petitioner was charged with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349. [CR Doc. 3: Indictment]. Harlan was charged with eight counts related the scheme and Jones with one count. [Id.]. Harlan, Jones, and Petitioner all proceeded to trial. Jones, however, decided to plead guilty partway through the trial. [CR 7/14/2016 Docket Entry]. Petitioner and Harlan were convicted by a jury of all counts against them. [CR Docs. 96, 97].

Petitioner was sentenced on November 30, 2016. Before sentencing, a probation officer prepared a PSR. [CR Doc. 111: PSR]. The probation officer found that the amount of loss attributable to Jones and Petitioner during the conspiracy was approximately $6,876,705.96 based on the false and fraudulent claims submitted to Medicaid by Esteem and CC1 during the relevant time frame. [Id. at ¶ 36]. The probation officer recommended a base offense level of six and an 18-level enhancement because the loss was at least $3,500,000 but less than $9,500,000, a two-level enhancement because the loss was to a Government health care program and involved over $1 million, and a two-level increase for abusing a position of public trust. [Id. at ¶¶ 42-46]. Petitioner's Total Offense Level (TOL) was 28 and his Criminal History Category was I, yielding a guidelines range of a term of imprisonment of 78 to 97 months. [Id. at ¶¶ 51, 64, 98]. Petitioner lodged numerous objections to the PSR. [CR Doc. 103]. He challenged many facts set forth therein and argued that the amount of the claims submitted to Medicaid was not the amount of the loss that should be attributed to Petitioner, but rather Medicaid's standard rates for the services billed. [Id. at 5-6]. Petitioner also filed a motion for downward departure or variance to a term of

imprisonment of one year, citing his belief that a lengthier sentence would not add any additional deterrent effect. [CR Doc. 124 at 5-7].

At sentencing, Petitioner's attorney again objected to the calculation of the loss amount. He argued that Petitioner should be responsible for only the total amount that he or his companies received, not the amount billed to Medicaid. [CR Doc. 169 at 4-10: Sentencing Tr.]. Petitioner's attorney argued that an individual billing Medicaid could not hope to get more than the maximum amount allowed by Medicaid for a claim and asserted that the allowable amounts were listed on the Medicaid website. [Id. at 6-7]. Petitioner's counsel relied on evidence from a witness at trial who testified that Medicaid has limits on the amounts it will pay for claims. [Id. at 7-8]. The Court held that "impossibility is not a defense to intended loss" and Petitioner's subjective intent controlled the loss amount. [Id. at 9]. The Court further held that Petitioner's intent was to get as much as he could, regardless of any limits set by Medicaid. [Id. at 9-10]. The Court, therefore, overruled Petitioner's objection on this issue. [Id. at 19-20]. The Court sentenced Petitioner to a term of imprisonment of 88 months. [CR Doc. 132 at 2: Judgment]. Judgment on Petitioner's conviction was entered on December 12, 2016. [Id.].

Petitioner appealed. He argued that the evidence was insufficient to show that he knowingly and willingly joined the conspiracy and challenged the procedural and substantive reasonableness of his sentence. Harlan, 714 Fed. App'x at 222. The Fourth Circuit affirmed, holding that "substantial evidence supports [Petitioner's] conviction" because the evidence demonstrated that "[Petitioner] knew of the scheme, participated in it, and profited significantly from it." Id. at 224. The Fourth Circuit also held that this Court did not err in attributing a loss of $6,876,705 to Petitioner based on the intended loss. Id. at 226. Finally, the Court held that Petitioner's sentence was procedurally and substantively reasonable. Id. at 226-27.

4

On December 3, 2018, Petitioner timely filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. [CV Doc. 1]. In his motion, Petitioner argues that he received ineffective assistance of trial counsel because his attorney failed to interview or call at trial certain potential witnesses, had a conflict of interest with the Government's "star witness," did not properly cross examine witnesses, and should have called an expert at sentencing. [CV Doc. 1-1 at 2-14]. Petitioner also contends that this Court erred in sentencing him, and he requests an evidentiary hearing. [Id. at 15-16]. After conducting initial review of the motion, the Court ordered the Government to respond. [CV Doc. 2]. The Government responded and Petitioner did not reply. [CV Doc. 5].

This matter is now ripe for adjudication.

## II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### A.     Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See

5

Case 3:15-cr-00226-FDW-DSC    Document 204    Filed 07/15/20    Page 5 of 13

Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### 1. Uncalled Witnesses at Trial

Complaints of ineffective assistance based on uncalled witnesses are disfavored because the presentation of witness testimony is a matter of strategy and the nature of such testimony is speculative. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). To demonstrate prejudice based on a claim of uncalled witnesses, a petitioner "must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." Id. A defendant

claiming ineffective assistance of counsel based on an uncalled witness should make a proffer of testimony from the uncalled witness. Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990). Similarly, to show ineffective assistance based on the failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). "[I]f there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue it cannot be prejudicial." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370-71 (1985)).

Here, Petitioner argues that his counsel failed to adequately investigate by interviewing key witnesses and that this failure was not part of a larger trial strategy. [CV Doc. 1-1 at 4-9, 11]. Petitioner contends that he identified several key witnesses, four of whom he names, "who were willing and able to provide context and information regarding Petitioner's alleged wrongdoings." [Id. at 6]. Petitioner contends that Tahiyya Lee was an "expert biller" who had personal knowledge of Petitioner's financial hardship, of his LME/MCO[2] health care issues, and that she was concerned with the confusion surrounding mental health services. Id. at 6. Petitioner asserts that Danielle Diggs, his sister, could have testified regarding the LME/MCO documents and how they are signed, and the confusion around the difference between Esteem and CC1. Id. at 7. Petitioner argues that Jeanette Williams was a client of CC1 and could have testified regarding the services she received. Id. Finally, Petitioner states that Travis Hubbard was able to testify regarding the difference between Esteem and CC1 and had knowledge of "the theft from eel offices" by Jones and Harlan. Id. at 8.

---

[2] LME/MCO stands for "Local Management Entities – Managed Care Organizations," which according to the NC Medicaid Division of Health Benefits website, manage the care of beneficiaries who receive services for mental health, developmental disabilities, or substance abuse disorders.

Petitioner argues that his counsel failed to interview or call these witnesses at trial, which left Petitioner unable to challenge the correctness of the Government's assertions, provide context for Petitioner's actions, describe the complexities of the LME/MCO service, or challenge the willfulness element of the charges against him. Id. Petitioner specifically contends that testimony regarding how easily "one could misunderstand or unintentionally violate the program" could have countered the willfulness element of the charges. Id. at 6.

Assuming for the sake of argument that counsel did not interview Petitioner's proposed witness, Petitioner has not shown prejudice. Regarding Williams testifying to the treatment she received at CC1, this is irrelevant. The charges against Petitioner were based on fraudulent billing for services that were not provided, not on failing to have any real patients. Further, Diggs' purported testimony regarding the "confusion" regarding the difference between Esteem and CC1 is also not relevant. Again, the charges related to Petitioner's conduct, not to a specific entity. Additionally, Petitioner's assertion that counsel should have called Diggs to explain mental health program documents and that their execution meant merely having been shown where to sign does not establish a reasonable probability that such testimony would have created doubt as to whether Petitioner signed the documents or changed the result at trial. This is especially true given Petitioner's willingness to accept the Medicaid payments and to spend them for his personal benefit.

Furthermore, testimony by Lee, Petitioner's former employee, regarding Petitioner's "personal financial hardships" and the alleged confusion around mental health services, would not reasonably have changed the outcome at trial. Evidence regarding Petitioner's financial hardship could have been used to show motive for engaging in fraud. "Confusion" regarding mental health services certainly would not have explained billing for services that were never provided or billing

for services allegedly provided by a physician that did not work for CC1. Namely, the charge against Petitioner involved the fabrication of clients, treatments, office notes, and bills for services that never occurred, not a misunderstanding of how the Medicaid process works. [See CR Doc. 111 at ¶ 26].

Finally, the purported testimony by Hubbard had no reasonable probability of changing the result of the trial. Petitioner contends that Hubbard would have testified regarding the different services provided by Esteem and CC1 and whether these services could transfer from one business to the other. Any limitations on Petitioner relative to the business entities or how they were related would not have made Petitioner's conviction any less likely. Petitioner also references the fact that Hubbard "witnessed theft from eel offices" by Jones and Harlan. [CV Doc. 1-1 at 8]. The significance of this allegation is not clear, and Petitioner provides no evidence, such as an Affidavit from Hubbard, to support this claim. Even if this claim related to Harlan's allegedly taking records from CC1's offices, it does not have any reasonable probability of changing the result at trial. The evidence did not support Plaintiff's assertion that he called Harlan about the missing records. Furthermore, Petitioner has not alleged or shown that the missing records would have supported his claim of innocence.

As such, Petitioner's claim of ineffective assistance based on uncalled witnesses at trial is without merit. Petitioner provides nothing other than unsupported assertions of what these witnesses could or would have testified too. See Bassette, 915 F.3d at 940-41. Additionally, even assuming the witnesses would have testified as alleged by Petitioner, there is no reasonable probability that the purported testimony would have changed the outcome of the trial. See Strickland, 466 U.S. at 694; Sexton, 163 F.3d at 882. Similarly, Petitioner's assertion that his counsel failed to investigate these witnesses also fails because Petitioner has shown no reasonable

probability that such investigation would have led to a possible defense that would have succeeded at trial. See Savino, 82 F.3d at 599. The evidence at trial of Petitioner's involvement in the Medicaid scheme was "overwhelming." [CR Doc. 169 at 78].

Plaintiff, therefore, has failed to show he is entitled to relief on these grounds.

### 2. Conflict of Interest with Government's "Star Witness" and Cross Examination of Witnesses

To establish ineffective assistance from a conflict of interest, a "petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) (quoting Cyler v. Sullivan, 446 U.S. 335, 348 (1980)). "[T]he Sixth Amendment right to conflict-free representation, like the right to counsel itself, may be the subject of a waiver." United States v. Swartz, 975 F.2d 1042, 1048 (4th Cir. 1992).

Petitioner claims that "the prior relationship between counsel and the government's star witness, Demetria Rainer, created a conflict of interest that seriously undermined the effectiveness of Petitioner's counsel in all phases of the proceedings." [CV Doc. 1-1 at 9]. Petitioner's claim is meritless. Petitioner signed a detailed and thorough waiver of the conflict of interest. [CR Doc. 58]. In this waiver, Petitioner acknowledge his counsel's prior relationship with Ms. Rainer, which at various times was personal, professional, platonic, and intimate, over the previous 14 years. [Id. 1-2]. The waiver noted the potential for Ranier to be called as a witness, the potential conflict of interest this created, and that Rainer "may have information that would be embarrassing or otherwise detrimental to [counsel]." [Id. at 2]. Petitioner stated in the waiver that he understood that he did not have to waive the conflict and that new counsel would be appointed for him if he chose not to waive the conflict. [Id. at 3]. Finally, Petitioner stated that, despite these facts, he

still wanted his counsel to represent him. [Id.]. As such, because Petitioner knowingly waived this conflict, this claim fails.

Petitioner also contends that his attorney failed to adequately prepare and cross-examine witnesses. [CV Doc. 1-1 at 9-10]. He contends that his counsel failed to adequately cross-examine Ranier after counsel told Petitioner that he would "shut her down" and expose her wrongdoings to the jury.[3] Petitioner's argument mischaracterizes the trial proceedings. Petitioner's attorney did not cross-examine Ranier until after Harlan's attorney and Jones, who proceeded pro se at trial, had cross-examined Ranier. Petitioner's attorney did elicit testimony on Ranier's disbarment, plea agreement, and sentence reductions for cooperation. He also had Ranier admit that she did not know Petitioner. [CR Doc. 167 at 163-167]. Petitioner suggests no other course of cross examination that would have yielded evidence favorable to Petitioner, nor does he show how he was prejudiced by his attorney's questioning of Ranier. As such, Petitioner has not shown deficient performance or prejudice as to his counsel's questioning of Ms. Ranier. Petitioner does not identify any other witnesses that he believes were inadequately cross examined. Accordingly, this claim, as it relates to other witnesses, will be dismissed as conclusory. See Dyess, 730 F.3d at 359-60.

In sum, Plaintiff has not shown that he is entitled to relief based on any conflict of his counsel with Ranier or on his counsel's cross-examination of witnesses.

### 3. Expert at Sentencing

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

---

[3] Ranier was a former attorney who had pleaded guilty to mortgage fraud, been disbarred, was cooperating with the Government, and, at the time of Petitioner's trial, was in prison. [CR Doc. 167 at 98-101].

11

Petitioner's claim that his attorney was deficient for failing to call an expert at sentencing to establish a ceiling amount on the Medicaid claims is without merit. The Court expressly found that the intended loss was the amount submitted or what Petitioner would have kept had it been paid, not Medicaid's cap on a claim. [See CR Doc. 169 at 9-12]. Accordingly, expert testimony on the maximum amount allowed under Medicaid would not have changed this calculation. See U.S.S.G. § 2B1.1 cmt. n.3(A), (A)(ii) (the greater of the actual or intended loss applies and the intended loss includes pecuniary harm that would have been impossible or unlikely to occur); United States v. Miller, 316 F.3d 495, 501-5 (4th Cir. 2003) (holding that the intended loss "is not limited by the amount of loss that is actually possible or likely to occur").

Accordingly, Petitioner cannot show deficient performance or prejudice from his counsel's failure to raise this issue. See Strickland, 466 U.S. at 687-88, 694.

B.    **Error by the Court at Sentencing**

Petitioner argues that the Court improperly sentenced him by failing to consider his history, characteristics, and contributions to the community. [CV Doc. 1-1 at 15-16]. He contends that a custodial sentence provides more deterrence for white collar criminals and he, therefore, should have been sentenced to only one or two years of imprisonment. [Id.]. This claim is barred. The Fourth Circuit held on direct appeal that Petitioner's sentence was procedurally and substantively reasonable. Harlan, 714 F. App'x at 226-27; see United States v. Linder, 552 F.3d 391, 397 (4th Cir. 2009) (recognizing that a petitioner may not circumvent a ruling on direct appeal by relitigating the issue on collateral review). Petitioner's claim on this issue lacks merit in any event. The Court properly considered the sentencing factors under 18 U.S.C. § 3553(a) and rejected Petitioner's argument for a lower sentence. [See CR Doc. 75-80]. This claim, therefore, will be dismissed.

Further, no evidentiary hearing is necessary in this case because the parties' submissions conclusively show that petitioner is not entitled to relief. See Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970)

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. Petitioner's Motion for Status [Doc. 6] is **DENIED** as moot.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: July 14, 2020

Frank D. Whitney
United States District Judge